1  SONAL N. MEHTA (SBN: 222086)
   **sonal.mehta@wilmerhale.com**
2  KEVIN J. O'BRIEN (SBN 278823)
   **kevin.o'brien@wilmerhale.com**
3  WILMER CUTLER PICKERING HALE AND DORR LLP
   950 Page Mill Road
4  Palo Alto, CA 94304
   Tel:  650 858 6000
5  Fax:  650 858 6100

6  MATTHEW BENEDETTO (SBN: 252379)
   **matthew.benedetto@wilmerhale.com**
7  WILMER CUTLER PICKERING HALE AND DORR LLP
   350 South Grand Avenue, Suite 2100
8  Los Angeles, CA 90071
   Tel: (213) 443-5300
9  Fax: (213) 443-5400

10 ARI HOLTZBLATT (*pro hac vice pending*)
   **ari.holtzblatt@wilmerhale.com**
11 WILMER CUTLER PICKERING HALE AND DORR LLP
   1875 Pennsylvania Avenue NW
12 Washington, DC 20006
   Tel: (202) 663-6000
13 Fax  (202) 663-6363

14 Attorneys for Defendants
   FACEBOOK, INC. and INSTAGRAM, LLC
15

16                          **UNITED STATES DISTRICT COURT**

17                          **NORTHERN DISTRICT OF CALIFORNIA**

18                                   **OAKLAND DIVISION**

| | |
|---|---|
| STACKLA, INC., a Delaware Corporation, STACKLA, LTD., an English Limited Company, and STACKLA, PTY, an Australian Proprietary Limited Company<br><br>Plaintiffs,<br><br>FACEBOOK, INC.. a Delaware Corporation, INSTAGRAM, LLC, a Delaware Limited Liability Company, and DOES 1-20<br><br>Defendants. | Case No. 4:19-CV-5849-PJH<br><br>**DECLARATION OF HERSHEL EISENBERGER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'** *EX PARTE* **MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:  September 25, 2019<br>Time:  9:00 am<br>Place:  Courtroom 3, 3rd Floor |

I, Hershel Eisenberger, declare:

1. I am Privacy & Public Policy Manager at Facebook. I submit this declaration based on personal knowledge following a reasonable investigation. If called upon as a witness, I could competently testify to the truth of each statement herein.

2. Any user of either the Facebook or Instagram Platform must abide by the terms of service that govern the particular platform. These terms of service govern the conduct of both end users (for instance, individual users of the platforms who have profiles), and third-party developers who develop apps for integration with the Facebook and Instagram platforms. The current Terms of Service for Facebook are available at https://www.facebook.com/terms.php and are attached hereto as Exhibit A. The current Terms of Use for Instagram are available at https://help.instagram.com/581066165581870 and are attached hereto as Exhibit B.

3. The Facebook Terms of Service expressly disallow users to "access or collect data from our Products using automated means (without our prior permission) or attempt to access data that you do not have permission to access." Likewise, Instagram's Terms of Use explicitly prohibit all users of Instagram, including third-party app developers and Facebook Marketing Partners, from "creating accounts or collecting information in an automated way without our express permission."

4. Third-party developers with apps or managed services for the Facebook or Instagram platforms must also abide by the Platform Policies for those platforms. Facebook's Platform Policy is available at https://developers.facebook.com/policy/ and attached as Exhibit C. Instagram's Platform Policy is available at https://www.instagram.com/about/legal/terms/api/ and attached as Exhibit D.

5. In the Instagram Platform Policy, Facebook advises its developers and Marketing Partners that it retains the right to enforce its policies by "disabling your app, restricting you and your app's access to Instagram Platform, requiring that you delete data, terminating our agreements with you or any other action that we deem appropriate." The Platform Policy also advises developers and Marketing Partners that "Instagram may change, suspend, or discontinue the availability of any Instagram Platform at any time. In addition, Instagram may impose limits on certain features and

- 1 -
DECLARATION OF HERSHEL EISENBERGER IN SUPPORT OF DEFENDANTS' OPP TO *EX PARTE*
MOTION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

services or restrict your access to parts or all of the Instagram APIs or the Instagram website without notice or liability." *Id.*

6.  Certain third-party developers may also seek to become Facebook Marketing Partners. All Facebook Marketing Partners certify that they will comply with Facebook's "Marketing Partner Program Policies," which are available at https://www.facebook.com/business/marketing-partners/become-a-partner/fmp-product-policies and attached as Exhibit E. These policies require all Facebook Marketing Partners to comply with "all Facebook policies," which includes the terms of service and platform policies described above.

7.  The Facebook policies against the unauthorized automated collection of user data, also known as "web-scraping," is important to protect user data. In general, the policy prohibits any user, third-party developer, or other party accessing either the Facebook or Instagram platforms from collecting users' data, content or information using "automated" means, such as harvesting bots, robots, crawlers, or spiders. Facebook does not authorize users, developers, or Marketing Partners to deviate from the terms of service that explicitly prohibit automated data collection.

8.  Third-party app developers, including Facebook Marketing Partners, use Facebook's Graph Application Programming Interface (or "API") as an access point for integration of their apps with Facebook's platform. The Graph API is the authorized way for third-party developers to get data into and out of the Facebook platform; for instance, it allows third-party developers to post news stories, manage ads, and otherwise query user data consistent with the platform's terms of service and users' privacy and application settings. The Graph API does not provide third-party developers unfettered access to user data. It sets limits, for instance, on the number of "calls" (or requests) that a user or app may make on the API. Facebook regularly updates the type of user data that can be accessed through the API for all developers, as reflected in its policies.

9.  Facebook's anti-scraping policy is part of Facebook's attempt to strike a careful and thoughtful balance between protecting user data and offering platform access to third-party developers, including Marketing Partners. Facebook's Marketing Partners are business partners

who bring value to Facebook, its users, and advertisers. To continue their business relationship with Facebook, Marketing Partners must treat user data in a manner consistent with Facebook's policies.

10. Facebook makes clear to users that public information can be seen by anyone, on or off our service, including if someone doesn't have an account. But because Facebook explicitly prohibits automated data collection, Marketing Partners, developers, or other unidentified third parties are not permitted to web-scrape user data, even user data that is set for "public" viewing. Facebook prohibits automated data collection, in part, to enable a user to retain control over who can access and use his or her data. If a user chooses to change her privacy settings from "public" to a smaller audience or to delete content entirely (both of which can be done at any time), but a third party had previously scraped and stored her data, the user's choice would not be honored and he or should would effectively have no ability to limit how the data is used by the third party.

11. The Graph API respects user privacy settings, and Facebook contractually requires developers that access the Graph API to also respect these settings. Developers and Marketing Partners who scrape and store that information circumvent these restrictions and undermine user control over their data.

12. Facebook must retain the ability to enforce its policies against automated data collection to help protect user privacy and deter third parties from engaging in unauthorized conduct.

13. Although not every instance of scraping constitutes malicious behavior, I understand that it can be difficult to determine whether scraping is engaged in for benign or malicious purposes.

14. Facebook therefore enforces its anti-scraping policies regardless of who is doing it or how they are using the scraped information. I understand that Stackla's access to the Facebook and Instagram platforms and Graph API has been suspended for violating these policies. Facebook is not targeting Stackla. Rather, Facebook has invested in technological solutions and policy efforts to prevent developers from improperly obtaining, collecting, or using user data, including by automated collection. Facebook works constantly to enforce its anti-scraping policies against anyone who engages in unauthorized collection of user data.

1  I declare under penalty of perjury under the laws of the United States that the foregoing is
2  true and correct, and that this declaration was executed on this 23rd day of September 2019, in
3  New York, New York.

4
5                                          By: _____
6
...

- 4 -
DECLARATION OF HERSHEL EISENBERGER IN SUPPORT OF DEFENDANTS' OPP TO *EX PARTE*
MOTION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION