SONAL N. MEHTA (SBN: 222086)
sonal.mehta@wilmerhale.com
KEVIN J. O'BRIEN (SBN: 278823)
kevin.obrien@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel:  650 858 6000
Fax:  650 858 6100

MATTHEW BENEDETTO (SBN: 252379)
matthew.benedetto@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
Fax: (213) 443-5400

ARI HOLTZBLATT (*pro hac vice pending*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax  (202) 663-6363

Attorneys for Defendants
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| STACKLA, INC., a Delaware Corporation, STACKLA, LTD., an English Limited Company, and STACKLA, PTY, an Australian Proprietary Limited Company<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.. a Delaware Corporation, INSTAGRAM, LLC, a Delaware Limited Liability Company, and DOES 1-20<br><br>Defendants. | Case No. 4:19-CV-5849-PJH<br><br>**DECLARATION OF GURBINDER GHOTRA IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'** *EX PARTE* **MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:    September 25, 2019<br>Time:   9:00 am<br>Place:   Courtroom 3, 3rd Floor |

- 1 -
DECLARATION OF GURBINDER GHOTRA IN SUPPORT OF DEFENDANTS' OPP TO *EX PARTE* MOTION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

I, Gurbinder Ghotra, declare:

1. I am a Partner Manager at Facebook. I submit this declaration based on personal knowledge following a reasonable investigation. If called upon as a witness, I could competently testify to the truth of each statement herein.

2. Facebook has a set of programs that allow certain developers to specialize in certain areas, including for example as Cross-Border Business Partners, Media Partners, or Facebook Marketing Partners ("FMP"). To become a FMP, a developer has to submit an application to Facebook for evaluation. If the developer satisfies all of Facebook's requirements for becoming an FMP and their application is approved, they receive a Facebook Marketing Partner "badge" that they can display on their website and marketing materials to signal they have special experience or expertise in a particular area (*e.g.*, tracking ad performance, creating ads, managing Facebook Pages). *See* https://www.facebook.com/business/marketing-partners/become-a-partner. This application and approval process is often called the "badging" process.

3. Within the FMP process, developers can receive badges for specific aspects of marketing, including the Creative Platform Partners ("CPP") program. The application and approval process is different for different FMP programs. CPP are specifically vetted for their mobile marketing experience and technology solutions for generating creative (i.e., ads) at scale. *See* https://www.facebook.com/business/marketing-partners/become-a-partner/creative.

4. Although the process involves a variety of steps, there are several key components to the CPP badging process. Below, I describe the components that existed when Stackla went through the process.

5. First, as with any third-party app, the applicant's app was required to pass Facebook app review process. This review was not conducted by the FMP team. It was a prerequisite to any app receiving access to the Graph API, not part of the FMP or CPP badging process. The app review process was handled by the Developer Operations team at Facebook. I understand that Bill Fusz will be submitting a declaration to the Court to explain how that process works.

6. Second, an applicant was required to meet or exceed a minimum dollar amount generated from ad content sourced from the applicant's managed service solution or proprietary technology.

7. Third, to show that they had a diverse and stable client-base, applicants were required to show that they had at least 5 active clients each spending more than $500 within the 12 weeks preceding application submission.

8. Fourth, applicants were required to meet our Technology Requirements. This required that all badging applicants had to be using the Facebook Marketing API and had to have an active Ads Management Standard Access account.

9. Fifth, applicants were required to be able to provide three case studies to demonstrate how their proprietary technology or managed service has been used by customers to develop creative content at scale.

10. Sixth, the applicant was required to submit a pre-recorded demo. The demo was a video or screen-capture of less than 2 minutes that showed how a user interacted with the applicant's technology or managed service to generate creative. The demos did not show how the applicant's technology or service worked from the "back-end."

11. Facebook's CPP badging process did not involve the evaluation of how an applicant's app or managed service calls the Graph API or whether it is accessing user data outside of the Graph API. If an applicant's app or managed service was accessing or retaining user content in violation of Facebook's terms or policies, this would generally not be revealed as part of the CPP badging process.

12. A condition of participating in the FMP is compliance with all applicable Facebook Policies. *See* https://www.facebook.com/business/marketing-partners/become-a-partner/fmp-product-policies. For example, Facebook's website for FMPs makes clear that "Marketing Partners must also comply with all Facebook policies," including Facebook's Platform Policies and Facebook's terms of service, among others. We specifically advise FMPs to "Please review them

carefully," and provide notice that "We reserve the right to request documentation from you to ensure your compliance." Once "badged," a Marketing Partner must agree to a Master Subscription Agreement. The Master Subscription Agreement requires that the Marketing Partners comply with the Facebook and Instagram policies as a Facebook vendor.

13. Stackla applied to Facebook's CPP multiple times and was ultimately badged in May 2019. I was assigned to serve as the point of contact and resource for Stackla during the CPP application and approval process when they initially applied and I worked with them through several of their applications, though not their final one. In this role, I helped Stackla understand the FMP requirements for the CPP program and provided guidance on collecting the information they would need to submit their application. My responsibilities during the application process did not involve a review the of technical details of how Stackla's app or managed services worked or how it made calls to Facebook's APIs, and I have no memory of reviewing such information. Instead, the application process focused on Stackla's technology for generation of ad content and how Stackla's customers could interact with that technology to generate ads at scale.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on this 23rd day of September, 2019, in Menlo Park, California.

By: _____

- 4 -
DECLARATION OF GURBINDER GHOTRA IN SUPPORT OF DEFENDANTS' OPP TO *EX PARTE* MOTION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION