JEFFREY E. TSAI (SBN 226081)
jeff.tsai@dlapiper.com
ISABELLE L. ORD (SBN 198224)
isabelle.ord@dlapiper.com
DAVID F. GROSS (SBN 083547)
david.gross@dlapiper.com
ANTHONY L. PORTELLI (SBN 280766)
anthony.portelli@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel:  415.836.2500
Fax:  415.836.2501

Attorneys for Plaintiffs
STACKLA, INC., STACKLA, LTD., and
STACKLA PTY LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STACKLA, INC., a Delaware Corporation, STACKLA, LTD., An English Limited Company, and STACKLA PTY LTD., an Australian Proprietary Limited Company,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a Delaware Corporation, INSTAGRAM, LLC, a Delaware Limited Liability Company, and DOES 1-50,<br><br>Defendants. | Case No. 19-cv-05849-PJH<br><br>**SUPPLEMENTAL DECLARATION OF DAMIEN WILLIAM MAHONEY IN SUPPORT OF PLAINTIFFS'** *EX PARTE* **MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE INJUNCTION** |

**SUPPLEMENTAL DECLARATION OF DAMIEN WILLIAM MAHONEY**

I, Damien William Mahoney, declare as follows:

1. I am the Chief Executive Officer and a director and shareholder of Stackla. This declaration supplements my declaration submitted in support of Stackla's *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (the "TRO Motion"). I have reviewed the opposition brief of Defendants Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") (collectively, "Defendants") to the TRO Motion, including all the papers supporting that opposition (the "Opposition"). I also submit this declaration in response to the Opposition.

**Stackla's Business Requires Access to Facebook and Instagram**

2. Defendants are incorrect in their assertion that "there is no direct evidence in the record on which the Court could base a conclusion that Stackla is existentially dependent on Facebook." Opp. Br. at 9:6-8. Stackla's business is based on providing its customers with customized and effective user content from online social media platforms—specifically, Facebook and Instagram. As set forth in my prior declaration ("Mahoney Declaration"), there is no substitute for the Facebook and Instagram platforms. *See* Mahoney Decl., ¶¶ 15-16.

3. Stackla funds operations through the collection of license fees from the sale of subscription agreements to existing and new customers for access to the Stackla platform, which includes access to Facebook and Instagram through Stackla. Approximately 80 percent of the content Stackla collects for its clients comes from Facebook and Instagram. Since Stackla has been deprived of access to Facebook and Instagram and customers cannot access these platforms through Stackla's platform, Stackla has received numerous customer complaints, and customers have threatened to cancel their Stackla contracts or have cancelled their contracts because Stackla cannot access Facebook and Instagram.

4. During Facebook's extensive vetting process for Stackla to become a Facebook Marketing Partner, Defendants were made aware that Stackla's business model depended on access to these platforms. My team and I participated in this process, including demonstrating Stackla's business model and platform to Defendants. Defendants also required Stackla to

establish that its clients would generate sufficient revenue on Defendants' platforms before Stackla could be accepted as a Facebook Marketing Partner.

**Stackla Did Not Delay in Seeking Relief**

5.   Contrary to the Opposition's claim of "Stackla's delay in seeking emergency relief," Opp. Br. at 11:19, Stackla has worked diligently and made numerous efforts to set the record straight with Facebook once we first learned about the Business Insider reporting.

6.   My colleagues and I reached out to Defendants numerous times to confirm that Stackla is not scraping data, as alleged in the article. Our attempts were met with silence up until Facebook's August 30, 2019, cease-and-desist letter, and Defendants' same-day denial of access to Stackla of the Facebook and Instagram platforms.

7.   Stackla retained counsel and exchanged correspondence with counsel for Defendants starting the following business day. During the exchanges, Stackla also provided confidential and proprietary information about its business in its good-faith effort to demonstrate that Defendants' accusations are false, and that Defendants had wrongly suspended Stackla. Stackla did not first resort to litigation, including the emergency relief now sought in Stackla's Motion—my hope had been from the beginning to informally resolve the issue that misinformation caused.

8.   Stackla's good faith efforts were met with confusing and inaccurate responses from Defendants and unreasonable demands, including requiring Stackla to turn over its source code to Defendants and to delete all of its data—essentially pre-conditions that would require Stackla to destroy its business in the hope of working something out with Defendants.  We gave the informal process a good faith try. Once it was clear last week that Facebook refused to reinstate Stackla's access and the danger to Stackla of insolvency was real and imminent, Stackla was left with no choice but to seek emergency relief to prevent destruction of the business.

9.   From the day that Defendants unfairly denied Stackla access to the Facebook and Instagram platforms, Stackla has already suffered significant financial harm. In the event that Stackla's access to the Facebook and Instagram platforms is not reinstated, Stackla's ability to continue as a going concern will be immediately threatened. I understand that Stackla's chief

financial officer / chief operating officer will be submitting a declaration that provides information related to this immediate threat.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration executed this 24th day of September, 2019, in San Francisco, California.

_____
DAMIEN WILLIAM MAHONEY